Jed W. Manwaring, ISB# 3040
EVANS KEANE, LLP
1405 W. Main St.
P. O. Box 959
Boise, Idaho 83701-0959
Telephone:  (208) 384-1800
Facsimile:  (208) 345-3514
Email: jmanwaring@evanskeane.com

Bryon J. Benevento (Pro Hac Pending)
Kimberly Neville (Pro Hac Pending)
Snell & Wilmer L.L.P.
15 West South Temple, Suite 1200
Salt Lake City, Utah  84101-1004
Telephone:  (801) 257-1900
Facsimile:  (801) 257-1800

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO, EASTERN DIVISION

| | |
|---|---|
| ROBERT LEACH, M.D., a Utah resident,<br><br>       Plaintiff,<br><br>vs.<br><br>IDAHO NEPHROLOGY ASSOCIATES, P.L.L.C., an Idaho professional limited liability company, KIDNEY PHYSICIANS OF IDAHO, L.L.C., an Idaho Limited Liability Company, MICHAEL ADCOX, M.D., an individual, NAGRAJ NARASIMHAN, M.D., an individual, MICHAEL MALLEA, M.D., an individual, ROBERT DAVIDSON, M.D., an individual, NICHOLAS HUNT, M.D., an individual. and JON WAGNILD, M.D., an individual.<br><br>       Defendant. | **COMPLAINT AND JURY DEMAND** |

For a Complaint against Idaho Nephrology Associates, P.L.L.C., Kidney

Physicians of Idaho, L.L.C., Michael Adcox, M.D., Nagraj Narasimhan, M.D., Michael

Mallea, M.D., Robert Davidson, M.D., Nicholas Hunt, M.D., and Jon Wagnild, M.D., Plaintiff Robert Leach, M.D. alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Robert Leach, M.D. ("Dr. Leach") is a medical doctor who specializes in nephrology, an area of medicine devoted to the diagnosis and treatment of patients with kidney disorders and disease.  Dr. Leach is a resident of the State of Utah and intends to practice medicine within the State of Utah.

2.      Defendant Idaho Nephrology Associates, P.L.L.C. ("INA") and Kidney Physicians of Idaho, L.L.C. ("KPI") are limited liability companies that are organized under the laws of the State of Idaho.  At all times material to this action, INA and KPI have operated a nephrology and internal medicine practice in Idaho.

3.      Defendants Michael Adcox, M.D., Nagraj Narasimhan, M.D., Michael Mallea, M.D., Robert Davidson, M.D., Nicholas Hunt, M.D., and Jon Wagnild, M.D., are individuals residing within the State of Idaho.  These individuals were members of INA and / or KPI at all times pertinent to this action.

4.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 in that this is an action between citizens of different states and the amount in controversy exceeds $75,000.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(2).

## GENERAL ALLEGATIONS

5.      Dr. Leach is a graduate of the University of Kansas Medical School who is board certified in the areas of nephrology, internal medicine, and clinical hypertension. Throughout his medical career, Dr. Leach has treated patients who suffer from a variety kidney disorders and diseases, including End Stage Renal Disease (ESRD).  Among other things, Dr. Leach has diagnosed and cared for patients who require dialysis, a process which removes wastes and excess water from the blood.

6.      Through his education and medical experience, Dr. Leach has developed expertise in the practice of nephrology and treatment of dialysis patients.  In 2000,

Dr. Leach obtained certification for an inpatient dialysis facility known as the Hutchinson Clinic.  In more recent years, Dr. Leach has consulted in obtaining certification for the Bear Lake Memorial Dialysis Facility located in Idaho.  Dr. Leach has also served as a Medical Director for dialysis facilities, in which he fulfilled the supervisory and administrative responsibilities mandated by Medicare guidelines.

7.      On approximately July 1, 2005, Dr. Leach entered into a one-year Employment Agreement with INA.  A true and exact copy of the Employment Agreement is attached hereto as Exhibit A.  The Employment Agreement was subsequently amended on July 13, 2005 in order to further clarify the term of the Employment Agreement.  A copy of the Addendum to Employment Agreement executed on July 13, 2005 is attached hereto as Exhibit B.

8.      Under the Employment Agreement, Dr. Leach agreed to provide medical services to patients and to supervise dialysis treatments provided to patients of INA's practice in the Pocatello area.  In addition, Dr. Leach agreed to serve as the Medical Director of the Portneuf Nephrology Center (now known as Gateway City Dialysis) located in Pocatello, Idaho.  In exchange for these services, INA agreed to pay Dr. Leach a base salary and to provide other consideration and benefits outlined in the Employment Agreement.

9.      Pursuant to Section 5.1 of the Addendum to the Employment Agreement, the parties agreed that the term of this employment would last for "one (1) year commencing on September 6, 2005 … and terminating on September 5, 2006."

10.      The initial term of Employment Agreement expired.  Dr. Leach, however, continued to perform medical services for INA on an at-will basis following the expiration of the parties' contract.  Dr. Leach formally resigned from INA on February 15, 2007, and has provided INA with written notice of his resignation.

## The Covenant Not-to-Compete

11.     The Employment Agreement contains a non-competition clause which purports to prevent Dr. Leach from practicing medicine or participating in the operation of a dialysis clinic for a period of five (5) years within a one hundred twenty-five mile (125) radius of Pocatello, Idaho.  Specifically, Section 7.1 of the Employment Agreement reads, in relevant part:

> 7.1     During the Term of this Agreement and for a period of five (5) years thereafter, Leach agrees:
>
> (a)     Not to solicit or attempt to solicit any Patient of INA so as to cause or attempt to cause such patient to terminate his or her relationship with INA;
>
> (b)     Except as provided in Section 7.2 below, Leach agrees not to engage (except as an employee of INA), directly or indirectly, whether as an employee, officer, shareholder, director, partner, sole proprietor or otherwise, in the practice of medicine within a one hundred twenty-five (125) mile radius of Pocatello, Idaho (the "Restricted Area") and
>
> (c)     Not to participate in the ownership, management, operation or control of (A) any outpatient dialysis facility located within the Restricted Area, (B) any business providing dialysis services or supplies directly or indirectly in the Restricted Area to parties with renal disease, including, without limitation, the provision of continuous ambulatory peritoneal dialysis, continuous cycler peritoneal dialysis, home dialysis or acute dialysis services to hospital patients, or (C) any business providing, directly or indirectly, in the Restricted Area that sells supplies in connection with the provision of dialysis services or treatments ….
>
> (d)     Not to solicit, influence or attempt to influence any of INA's employees or independent contactors to alter or terminate their relationship with INA.

12.     Dr. Leach has complied with the covenant not-to-compete in that he has not solicited INA patients nor attempted to establish a competing medical practice or dialysis clinic in the Pocatello area.  Dr. Leach has, however, recently relocated to

Ogden, Utah and intends to practice medicine and participate in the operation of dialysis centers in Northern Utah.

13.    Defendants contend that the covenant not-to-compete prohibits Dr. Leach from practicing medicine and / or participating in the operation of dialysis clinics in Northern Utah, and has threatened Dr. Leach with litigation.  The enforcement of the covenant not-to-compete in such a manner would be detrimental to Dr. Leach's medical career and financial livelihood, in that it would prevent him from pursuing his profession and utilizing his medical training.

14.    The enforcement of the covenant not-to-compete would also be contrary to public policy of the State of Idaho and the State of Utah, as it would prevent Dr. Leach from serving numerous kidney patients who are in need of a clinically trained nephrologist.  In particular, the covenant purports to prevent Dr. Leach from serving critically ill ESRD patients who suffer from chronic kidney failure.

15.    The covenant not-to-compete is not necessary to protect a legitimate business interest, but instead, is intended to prevent legitimate competition among medical professionals.  The 125-mile radius and 5-year term of the covenant is excessive and unduly burdensome when compared to the nature and term of the parties' Employment Agreement.

### The Buy-In Provision

16.    In order to induce Dr. Leach to accept employment with INA and to consent to the non-competition provision, Defendants granted Dr. Leach the right to "buy-in" to the ownership interest of INA and KPI after the completion of his initial one-year term under the Employment Agreement.

17.    The terms of Dr. Leach's buy-in for INA and KPI are governed by Section 9 of the Employment Agreement, which reads as follows:

9.    Buy-In Option.

Unless earlier terminated as provided for herein, upon expiration of the initial one (1) year terms set forth in Section 5.1 hereof, Leach shall be entitled to purchase a membership interest in INA equal to the interests owned by the other Members of INA.  The purchase price (the "Purchase Price") for the membership interest to be purchased by Leach shall be equal to the fair market value of INA's tangible assets and INA's accounts receivable, as such value are determined by INA, multiplied by the total percentage ownership in INA Leach will own after the conclusion of the buy-in transaction.  The parties acknowledge and agree that upon Leach's purchase of an interest in INA, Leach shall have the option to purchase an interest in Kidney Physician of Idaho, L.L.C. equal to interests held by the other Members of such entity.  Such purchase shall occur over a five (5) year period pursuant to an agreement between Leach, Kidney Physicians of Idaho, L.L.C. and the other Members of such entity.

18.     The Buy-In Option was a material term of the Employment Contract, which Dr. Leach relied upon in making his decision to accept employment with INA. Dr. Leach further relied upon this Buy-In Option in making the decision to move his medical practice and relocate his family to Idaho.

19.     Dr. Leach performed the services and obligations that were required under the Employment Agreement for the full one-year term of the contract.  Defendants, however, have breached Paragraph 9 of the Employment Agreement by refusing to honor Dr. Leach's buy-in option at the conclusion of Dr. Leach's one-year term.  Likewise, Defendants refused to honor Dr. Leach's buy-in option to purchase an interest in KPI. Dr. Leach has been damaged by Defendants' refusal to honor the buy-in options in that he has been denied the opportunity to share in the equity and income associated with these membership interests.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment – Covenant Not to Compete Void)

20.     Dr. Leach incorporates the allegations of Paragraphs 1 through 19 above.

21.     The Employment Agreement contains a covenant not-to-compete which purports to prevent Dr. Leach from practicing medicine or otherwise treating ESRD patients for a period of five (5) years within a one hundred twenty-five mile (125) radius of Pocatello, Idaho.

22.     The non-competition provision is invalid as a matter of law because it is not necessary to protect a legitimate business interest, but instead, is an anti-competitive attempt to restrict fair competition within the medical community.

23.     The non-competition agreement is also excessive in terms of time, scope, and / or geographic limits in that it purports to prevent Dr. Leach from participating in the treatment or care of any ESRD patient within 125-mile radius of Pocatello, Idaho for a period of 5 years following the termination of the Employment Agreement.  The breadth and scope of the non-competition clause is unreasonable when compared to the initial term of the Employment Agreement, and far exceeds any reasonable parameters necessary to protect a legitimate business concern of INA.

24.     In addition, the non-competition agreement is contrary to the public policy, as it purports to prevent Dr. Leach from caring for and treating critically ill ESRD patients and from using his medical training and skill to serve dialysis providers.  There is a legitimate need for medical providers in the geographic territory covered by the non-compete, and the covenant would hinder the public interest in providing quality medical care to individuals living within these areas.

25.     There is a real and substantial controversy between Dr. Leach, on the one hand, and Defendants, on the other hand concerning the enforceability of the covenant not-to-compete.

26.     Dr. Leach is entitled to a declaratory judgment finding that the covenant not-to-compete is unenforceable as a matter of law because it is: (a) not necessary to protect a legitimate business interest; (b) excessive in terms of its time, scope, and/or geographic limits, and (c) contrary to public policy.

27.     Dr. Leach is further entitled to any additional relief necessary to enforce this Court's declaratory judgment, as well as reasonable attorneys' fees and costs incurred in obtaining this order.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment – Covenant Unenforceable Due to Prior Material Breach)

28.     Dr. Leach incorporates the allegations of Paragraph 1 through 27 above.

29.     Section 9 of the Employment Agreement contains a "buy-in" provision that grants Dr. Leach the right to purchase an ownership interest of INA and KPI after the completion of his initial one-year term of service.

30.     The Buy-In Option was a material term of the Employment Contract, and part of the consideration which Dr. Leach relied upon in making his decision to accept employment with INA and to provide services to KPI's dialysis clinics.

31.     Dr. Leach performed the services and obligations that were required under the Employment Agreement for the full one-year term of the contract.  INA, KPI, and their member physicians benefited from these services in that Dr. Leach generated revenue for the Defendants while treating and recruiting recruited new patients to INA's practice and KPI's dialysis clinics.

32.     Defendants, however, breached Paragraph 9 of the Employment Agreement by refusing to honor Dr. Leach's buy-in options at the conclusion of the initial one-year term.  Defendants further breached the Employment Agreement by selling substantially all of KPI's assets to Davita, Inc. / Total Renal Care, a third party, without obtaining Dr. Leach's consent and without compensating him for his option interest.  Upon information and belief, Defendants have wrongfully disbursed the proceeds of that sale without allocating any portion of the proceeds for Dr. Leach's option interest.

33.     Defendants' conduct constitutes a prior material breach of the Employment Agreement, which terminates the contract and any continuing obligations.  Likewise, in light of Defendants' conduct and breach of the Employment Agreement, it would be inequitable and unjust to enforce the covenant not-to-compete against Dr. Leach.

34.     Dr. Leach is entitled to declaratory judgment finding that Defendants have engaged in a prior material breach of the Employment Agreement and that, as a result, the covenant not-to-compete is unenforceable in accordance with the express provisions of the Employment Agreement and void as a matter of law.

35.     Dr. Leach is further entitled to any additional relief necessary to enforce this Court's declaratory judgment, as well as reasonable attorneys' fees and costs incurred in obtaining this order.

## THIRD CAUSE OF ACTION
### (Breach of Contract)

36.     Dr. Leach incorporates the allegations of Paragraphs 1 through 35 above.

37.     The Employment Agreement contains a "buy-in" provision which grants Dr. Leach the right to purchase an ownership interest of INA, as well as an ownership interest in KPI after the completion of his initial one-year term of service.

38.     The Buy-In Option was a material term of the Employment Contract, which Dr. Leach relied upon in making his decision to accept employment with INA and to provide services to KPI's dialysis clinics.

39.     Dr. Leach performed the services and obligations that were required under the Employment Agreement for the full one-year term of the contract.  INA, KPI, and their member physicians benefited from these services in that Dr. Leach generated revenue for the Defendants while treating and recruiting recruited new patients to INA's practice and KPI's dialysis clinics.

40.     Defendants, however, breached Paragraph 9 of the Employment Agreement by refusing to honor Dr. Leach's buy-in options at the conclusion of the initial one-year term.

41.     Defendants further breached the Employment Agreement by selling substantially all of KPI's assets to a third party without obtaining Dr. Leach's consent, and without compensating him for his option interest.  Upon information and belief,

Defendants have wrongfully disbursed the proceeds of that sale without allocating any portion of the proceeds for Dr. Leach's option interest.

42.     Dr. Leach has been damaged by Defendants' refusal to honor the buy-in options in that he has been denied the opportunity to share in the equity and income associated with a membership interest in INA and KPI.

43.     Dr. Leach is entitled to actual and compensatory damages resulting from Defendant's breach of the Employment Agreement, in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION
**(Interference w/ Prospective Economic Relations)**

44.     Dr. Leach incorporates the allegations of Paragraphs 1 through 43 above.

45.     Dr. Leach has an economic relationship with current and prospective patients which he has developed through years of service, professionalism, and goodwill. Defendants know of, and have benefited from Dr. Leach's professional reputation in that they have collected fees for services rendered by Dr. Leach to various patients.

46.     Dr. Leach also enjoys a prospective economic relationship with new patients who seek medical care, as well as dialysis providers who wish to consult with Dr. Leach in the operation of their clinics.  This economic relationship exists because Dr. Leach has developed a reputation within the medical community as a highly trained and skilled nephrologist.

47.     Defendants have interfered with Dr. Leach's prospective economic relations by preventing Dr. Leach from treating ESRD patients and by preventing Dr. Leach from working with dialysis providers.  Defendants have engaged in this conduct with an improper purpose and through improper means including threats, intimidation, and frivolous accusations.

48.     Defendants' interference with Dr. Leach's lawful practice of medicine and pursuit of legitimate business opportunities within the medical community has caused damage to Dr. Leach in amount to be proven at trial.

49.     Defendants' conduct was sufficiently willful, malicious, and wrongful to justify an award of other damages, as well as recovery of reasonable attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**(Negligent Misrepresentation)**

50.     Dr. Leach incorporates the allegations of Paragraphs 1 through 49 above.

51.     Before he accepted employment with INA, Dr. Leach had a well-established and respected medical practice in Kansas and Colorado.  Dr. Leach had also enjoyed a growing reputation in the medical community, as well as a lucrative salary and benefits from his previous position.

52.     In order to induce Dr. Leach to accept employment, INA, KPI, and their member physicians represented to Dr. Leach that he would be offered a partnership opportunity and equity membership in INA as well as KPI.  Defendants further represented that Dr. Leach could expect a substantial increase in his salary / draw as well as additional monetary benefits from his membership interest.  In addition, Defendants promised Dr. Leach that there would be additional growth opportunities and financial rewards from the ongoing expansion of INA and KPI 's practice throughout the State of Idaho.

53.     Defendants' misrepresentations were made for purposes of inducing Dr. Leach to accept employment and to provide services to INA and KPI, which in turn, benefited the member physicians.  These misrepresentations were material, and were critical to Dr. Leach's decision to enter into a business relationship with the Defendants.

54.     Dr. Leach relied upon the misrepresentations to his detriment in making the decision to accept employment with INA.  Among other things, Dr. Leach has: (a) abandoned a highly successful and growing practice in Colorado to pursue the promise of partnership with INA and KPI; (b) relocated his family to Idaho at substantial cost and

personal expense; and (c) foregone other professional opportunities under the guise of Defendants' promise to give him a partnership interest in INA and KPI.

55.     Dr. Leach has been damaged by Defendants' conduct, in an amount to be proven at trial.

<u>**PRAYER FOR RELIEF**</u>

Wherefore, Plaintiff respectfully requests this Court to enter judgment against Defendant as follows:

1.     On his First Cause of Action, for an order declaring that the covenant not-to-compete is unenforceable because it does not protect a legitimate business interest, is overly broad in time and scope, and / or contrary to public policy, along with reasonable attorneys' fees and costs, together with any other relief necessary to give effect to the Court's declaration.

2.     On his Second Cause of Action, for an order declaring that the covenant not-to-compete is unenforceable due to Defendant's prior material breach of contract, and for reasonable attorneys' fees and costs, together with any other relief necessary to give effect to the Court's declaration.

3.     On his Third Cause of Action, for general damages in an amount to be proven at trial but not less than $3,000,000, and for reasonable attorneys' fees and costs.

4.     On his Fourth Cause of Action, for general and other damages in an amount to be proven at trial but not less than $10,000,000, plus reasonable attorneys' fees and costs.

5.     On his Fifth Cause of Action, for general and other damages in an amount to be proven at trial but not less than $3,000,000, plus reasonable attorneys' fees and costs.

6.     For any other relief that this Court deems just and equitable under the circumstances.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues triable as a matter of right.  Plaintiff has tendered the requisite fee to the Clerk of Court.

DATED this 22nd day of June, 2007.


_____/s/_____
Jed W. Manwaring
Evans Keane LLP

Bryon J. Benevento
Kimberly Neville
Snell & Wilmer, LLP

*Attorneys for Plaintiff*

426753.5