# IDAHO NEPHROLOGY ASSOCIATES, P.L.L.C.
## EMPLOYMENT AGREEMENT

*Thank Box*

*339-4752*

**THIS EMPLOYMENT AGREEMENT** is made and entered into this First (1st) day of July 2005, by and between Idaho Nephrology Associates, P.L.L.C., an Idaho professional limited liability company ("INA") and Robert J. Leach, M.D. ("Leach").

## WITNESSETH:

**WHEREAS**, INA operates a nephrology and internal medicine practice which provides patient care services (the "Practice");

**WHEREAS**, INA desires to employ Leach to practice medicine as an employee of INA; and

**WHEREAS**, Leach desires to accept such employment on the terms and conditions hereinafter set forth.

**NOW, THEREFORE**, in consideration of the mutual promises, covenants and agreements hereinafter contained, the parties agree as follows:

1. **Employment.**

   1.1   <u>Professional Duties</u>. INA hereby employs Leach to provide professional medical services on behalf of INA. Leach's duties hereunder shall include (a) furnishing physician services to patients, including Medicare and Medicaid beneficiaries, presenting themselves at the Practice, (b) supervising dialysis treatments provided to such patients, and (c) such other duties as may be determined by INA, including but not limited to the furnishing of medical director services to Portneuf Nephrology Center. Leach shall perform his duties to the best of his ability and in a manner consistent with the principles of medical ethics of the American Medical Association. Leach, together with the other physicians employed by or affiliated with the Practice, shall be responsible for physician coverage of INA's patients at the Practice (and at any hospital where such patients are admitted or any facility where they receive treatment) pursuant to a schedule to be determined by INA. Such schedule shall provide that Leach shall work the amount of hours that are customary for a nephrologist working full-time in a mature practice. In addition, during the term of this Agreement, Leach will provide call coverage in rotation pursuant to INA's call schedule. Leach and INA agree to work cooperatively and in good faith with each other and with physicians on staff at Portneuf Medical Center to assure call coverage. In the event the parties are unable to arrange for call coverage as contemplated, then the parties will negotiate for a period of time not to exceed ninety (90) days in a good faith attempt to restructure Leach's call obligations. If the parties cannot agree on how to restructure call, then either party may terminate this Agreement on thirty (30) days notice. During the term of this Agreement, Leach shall obtain and maintain medical staff membership and privileges at such hospitals as INA may request.

EXHIBIT
A

1.2    <u>Administrative Duties</u>. Leach, together with the other physicians employed by or affiliated with INA, shall be responsible to assist at the Practice with the following administrative duties: the development and upgrading of patient care protocols; preparation and submission of written reports for the ongoing review of utilization data of the Practice; requisition of repair and maintenance services as necessary for Practice facilities and equipment, as needed; advising the Practice business manager of any supply or service needs of the Practice; assisting in the establishment and implementation of procedures to preserve and enhance the quality of all services provided at the Practice in keeping with the facilities available and the standard of care required by accrediting institutions; and assisting the Practice in developing standards and procedures for the filing and retention of medical reports for the Practice.

1.3    <u>Application of Standards</u>. Leach shall use his best efforts to perform his duties in conformity with the community standard of care, and with the requirements of Medicare, Medicaid and any third party payor exercising authority with respect to, or providing reimbursement for, the Practice.

1.4    <u>HMO/PPO Contracts</u>. Leach shall accept all health maintenance organization and preferred provider organization contract and patients that have been approved by INA on the terms that such plans have been approved by INA.

1.5    <u>Fees</u>. All patients treated by Leach during the term of this Agreement shall be considered INA's patients. During the term of this Agreement, INA shall bill and collect for all medical services performed or rendered by Leach to any patient and Leach shall not independently bill any patient or any other party or entity with respect to such medical services. Leach shall submit timely and complete billing slips accurately documenting the professional services rendered by Leach. All revenues derived from the operation of the Practice or from any clinical or other medical services rendered by Leach during the term of this Agreement shall be and remain the property of INA. To the extent the Practice's operations generate operating deficits or shortfalls, continuing payment of such deficits and shortfalls shall be and remain the sole and exclusive liability and obligation of INA and Leach shall have no liability therefore.

1.6    <u>Assignment and Reassignment</u>. To the extent requested by INA, Leach agrees to accept assignment of benefits and respect the terms thereof for all professional services furnished to patients who are beneficiaries under the Medicare program, the Medicaid program, and other third party programs designated by INA. Leach hereby reassigns to INA the exclusive right to bill all such payors. In the event a third party payment program requires any or all Services performed by Leach to be billed in the name of or on behalf of Leach, Leach hereby designates, authorizes and appoints INA as his or her agent and grants INA or its agent a power of attorney to bill on behalf of Leach for all services performed by Leach and to obtain provider numbers on behalf of Leach to facilitate such billing.

1.7    <u>Records and Files</u>. Complete and accurate medical records shall be maintained for all patients of INA, and Leach agrees to cause appropriate entries to be timely made in said records for each patient seen by Leach. All case records, phone numbers, charts and personal files, or any other pertinent information in any form, electronic or otherwise, concerning patients of INA shall belong to and remain the property of INA. On termination of Leach's employment, Leach shall not be entitled to keep or reproduce INA's records phone numbers, charts or personal

files related to any patients unless (a) the patient specifically requests in writing that photocopies of the records be transmitted to Leach, which photocopies shall be reproduced at Physician's expense, or (b) the records or other information is required for board certification, litigation, tax audits or insurance purposes, which photocopies shall be reproduced at Leach's expense. Leach understands that INA owns all communication, intellectual and marketing properties, including but not limited to all medical group phone numbers, e-mail addresses, web sites, corporate logo and name, and any other such resources.

   1.8   Efforts.   Subject to the limitations and exceptions set forth in this Agreement, during the term of this Agreement (a) Leach shall devote substantially all of his professional medical time and professional medical skill to the affairs and activities on INA, and (b) Leach will not engage in activities which are competitive with INA's business.   Leach shall be permitted during the term hereof to (a) engage in charitable and civic activities, manage personal investments and pursue other business interests to the extent such other business interests do not relate to the practice of medicine or the delivery of medical health care services or supplies and do not interfere with Leach's performance of his duties under this Agreement, (b) lease or sell any real property in which Leach has any financial interest to any person or any entity, for any purpose, including for medical offices and/or related purposes, and (c) provided expert witness testimony.

   1.9   Dress and Personal Appearance.   The dress and personal appearance of all INA staff and physicians contribute to the professional image we present to our patients, our employees, our professional colleagues, hospital staff and the community. All INA physicians are asked to dress conservatively and professionally which when attending to patients in any setting as well as in hospital medical staff and administrative settings.

2.   **Compensation.**

   2.1   Base Compensation.   In consideration of the performance of the professional services by Leach hereunder, INA shall pay to Leach during the term of this Agreement base compensation ("Base Compensation") as follows: (a) Two Hundred Thousand Dollars ($200,000) during the twelve (12) month term of this Agreement. Base Compensation shall be payable in accordance with INA's regularly scheduled pay periods and subject to customary withholdings.

   2.2   Additional Benefits.   In addition to the Base Compensation set forth above, INA shall provide Leach with the additional benefits set forth below:

      2.2.1   Health Insurance.   Health Insurance coverage for Leach, his spouse and dependents.

      2.2.2   Insurance.   During the term of this Agreement, INA shall, at INA's sole cost and expense, obtain and maintain a claims made professional medical malpractice insurance policy in customary form which provides Leach with malpractice coverage in an amount comparable to the coverage for the other physician's affiliated with INA.

2.2.3   Retirement Benefits.  For each year of this Agreement, INA shall make a contribution to INA's retirement plan on Leach's behalf comparable to the percentage contribution INA makes for the other physicians affiliated with INA.

2.2.4   Fees and licenses.  During the term of this Agreement, INA shall pay the costs of maintaining Leach's medical and pharmacy licensure in the State of Idaho and shall pay application fees and medical staff dues at such hospitals as INA may request pursuant to Section 1.1.

2.2.5   Signing/Relocation Bonus.  Within fifteen (15) days of the execution of this Agreement, INA shall pay Leach a one-time signing/relocation bonus equal to Ten Thousand Dollars ($10,000).

3.   **Office Facilities.**

3.1   Practice Facilities.  During the term of this Agreement, INA shall provide and make available (at INA's sole cost and expense) reasonably necessary clinic space, medical equipment and supplies.  INA shall bear and pay for all costs and expenses relating to the Practice, including all rental, taxes, insurance, maintenance, repair, replacement, capital expenditures, utilities and build-out costs.  INA will provide Leach with a pager, but Leach shall be responsible for a cellular phone, personal computer and any other materials such as a PDA.  INA agrees to make such facilities available in Pocatello, Idaho.  If Leach and INA agree to discontinue providing services in Pocatello, Idaho INA agrees to employ Leach through its Boise, Idaho offices through the remainder of the term of this Agreement.

3.2   Personnel.  During the term of this Agreement, INA shall, at its sole cost and expense, provide to the Practice all non-physician medical personnel as shall be necessary in the reasonable opinion of INA to operate and maintain the Practice.

3.3   Books and Records.  INA shall, at all reasonable times during the term of Leach's employment, provide Leach with reasonable access to all books and records of the Practice to the extent that such books and records relate to services rendered by Leach.

3.4   Costs to be Incurred by INA.  All costs to be borne by INA pursuant to this Section 3 shall be in addition to the compensation and benefits payable by INA pursuant to Section 2 of this Agreement.

4.   **Personal Leave.**

For each year during the term of this Agreement, Leach shall be entitled to eight (8) weeks of paid personal leave, to be taken in whole or in part at such time or times as shall be mutually acceptable to INA and Leach.  Personal leave will accrue pro-rata over the term of this Agreement.  At the end of the one-year term of this Agreement, or if this Agreement terminates under Section 5.3, INA agrees to allow Leach to "cash out" accrued personal leave at an amount equal to $200,000 divided by the number of non-holiday weekdays in the year.  For purposes hereof, holidays shall be Christmas, New Years, Memorial Day, Independence Day, Labor Day and Thanksgiving Day.  All payments in lieu of vacation shall be net of and subject to applicable taxes and withholdings.  If this Agreement terminates prior to the expiration of the one-year term

under Sections 5.2.1 – 5.2.10, INA shall not be obligated to pay Physician for accrued but unused personal leave.

**5. Termination.**

5.1 <u>Term</u>. Except as otherwise provided below, the term of this Agreement shall be one (1) year commencing on July 1, 2005 (the "Effective Date"), and terminating on June 30, 2006.

5.2 <u>Termination by INA</u>. Notwithstanding the term set forth in Section 5.1 hereof, INA shall have the right to terminate this Agreement prior to the end of the then existing term upon INA's written notice to Leach of the occurrence of an event set forth below:

5.2.1 Leach's breach of any of his material obligations hereunder which breach is not corrected by Leach within thirty (30) days after written notice thereof is given to Leach by INA;

5.2.2 The exclusion or suspension of Leach from participation in the Medicare or Medicaid programs for a period of more than ninety (90) days; provided, however, that if the exclusion or suspension is for a period less than ninety (90) days, Leach shall not be entitled to any Base Compensation during such period;

5.2.3 The suspension, loss or revocation of Leach's right to practice medicine in the State of Idaho for a period of more than ninety (90) days; provided, however, that if the suspension, loss or revocation is for a period less than ninety (90) days, Leach shall not be entitled to Base Compensation during such period;

5.2.4 The death of Leach;

5.2.5 Any misrepresentation with respect to Leach's representations and warranties contained in Section 6 hereof;

5.2.6 The termination of Leach's medical staff membership or privileges at any hospital at which Leach has privileges pursuant to Section 1.1 hereof, or his inability to obtain such privileges within ninety (90) days of the execution of this Agreement;

5.2.7 The inability of Leach to fulfill the provisions of this Agreement due to physical or mental disability which disability continues for a period greater than ninety (90) days;

5.2.8 The conviction of Leach of a felony;

5.2.9 The engaging by Leach in an act of fraud or gross negligence relating to the performance of his services under this Agreement; or

5.2.10 Leach's failure to obtain a license to practice medicine in the State of Idaho prior to the Effective Date.

5.3    Termination by Leach.  Notwithstanding the term set forth in Section 5.1 hereof, Leach shall have the right to terminate this Agreement prior to the end of the then existing term upon INA's breach of any of its material obligations under this Agreement, which breach is not corrected by INA within thirty (30) days after written notice thereof is given to INA by Leach.

5.4    Effect of Termination.  Upon termination of this Agreement, the parties shall have no further duties with respect to each other except for those duties and obligations arising prior to the date of termination, including but not limited to the payment of Base Compensation pursuant to Section 2 hereof, and those duties and obligations which are expressly intended to survive termination of this Agreement, including but not limited to Sections 7 and 8.

6.    **Representations and Warranties of Leach.**

As an inducement for INA to enter into this Agreement, Leach expressly represents and warrants that:

6.1    No outstanding medical malpractice claims are pending against him, he has no knowledge of any incidents that might reasonably lead to a claim of malpractice, and no incidents have been previously settled unless disclosed in writing to INA prior to execution of this Agreement.  Leach will immediately disclose to INA any malpractice claims or any incidents which may give rise or result in a malpractice claim which occur between the date hereof and the Effective Date of this Agreement.

6.2    Leach has neither been arrested for, nor convicted of, any crime, minor traffic infractions excepted, and has no current undisclosed alcohol or drug problems or impairment that might hinder his full and faithful performance hereunder.

7.    **Covenant Not to Compete.**

7.1    During the term of this Agreement and for a period of five (5) years thereafter, Leach agrees:

(a)    Not to solicit or attempt to solicit any Patient of INA so as to cause or attempt to cause such patient to terminate his or her relationship with INA;

(b)    Except as provided in Section 7.2 below, Leach agrees not to engage (except as an employee of INA), directly or indirectly, whether as an employee, officer, shareholder, director, partner, sole proprietor or otherwise, in the practice of medicine within a one hundred  twenty-five (125) mile radius of Pocatello, Idaho (the "Restricted Area") and

(c)    Not to participate in the ownership, management, operation or control of (A) any outpatient dialysis facility located within the Restricted Area, (B) any business providing dialysis services or supplies directly or indirectly in the Restricted Area to parties with renal disease, including, without limitation, the provision of continuous ambulatory peritoneal dialysis, continuous cycler peritoneal dialysis, home dialysis or acute dialysis services to hospital patients, or (C) any business providing, directly or indirectly, in the Restricted Area that sells

supplies in connection with the provision of dialysis services or treatments; provided, however, that nothing contained herein shall be construed to prevent Leach from investing in the stock of any entity listed on a national securities exchange or traded in the over-the-counter market if Leach is not involved in any capacity in the business of said entity and if Leach and Leach's associates (as such term is defined in Regulation 14(A) promulgated under the Securities and Exchange Act of 1934, as in effect on the date hereof), collectively, do not own more than an aggregate of five percent (5%) of the stock of such entity;

(d)    Not to solicit, influence or attempt to influence any of INA's employees or independent contractors to alter or terminate their relationship with INA.

(e)    For purposes of this Section 7, the term "Patient" shall mean any individual to whom INA provides services during the term of this Agreement and thereafter.

(f)    If a court of competent jurisdiction should declare the covenants contained in this Section 7 unenforceable because of any unreasonable restriction of duration and/or geographical area, then the parties hereby acknowledge and agree that such court shall have the express authority to reform such unenforceable covenant to provide for reasonable restrictions and/or grant such other relief at law or in equity reasonably necessary to protect the interests of INA.

(g)    Leach specifically acknowledges that a breach of this Section 7 would cause INA to suffer immediate and irreparable harm, which could not be remedied by the payment of money. In the event of a breach or threatened breach of the provisions of this covenant by Leach, INA shall be entitled to injunctive relief to prevent or end such breach, without the requirement to post bond. Nothing herein shall be construed as prohibiting INA from pursuing any other remedies available to if for such breach or such threatened breach, including the recovery of damages.

7.2    As a limited exception to the provision of Section 7.1(b) above, Leach shall be entitled to practice general internal medicine or any other medical specialty unrelated to the care or treatment of end stage renal disease patients following the termination of this Agreement so long as no part of such internal medicine or other practice involves the care, treatment, supervision or medical direction of end stage renal disease patients or any facility providing care or treatment of end stage renal disease patients. As further limited exception to Section 7.1(b), Leach shall not be restrained under Section 7.1(b) if Leach terminates this Agreement under Section 5.3 hereof.

8.    **Confidential Information.**

During the term of this Agreement and at all times thereafter, Leach shall not (except as may be required by law or to carry out his duties and/or provide medical care as required and/or

contemplated under this Agreement) use for his own benefit or divulge, furnish, or cause to be divulged or furnished, or make accessible to any corporation, partnership, joint venture, person or entity (other than INA or its employees or Leach's lawyers or accountants), any confidential knowledge or information, including but not limited to patient lists and information, terms of this Agreement, financial statements or information, supplier information, contracts or any other information relating to the business and affairs of INA, which he may have obtained in connection with his duties hereunder during the term of this Agreement; provided, however, in the event that Leach is required by law to disclose any of the foregoing information, Leach shall provide INA with prompt written notice of such required disclosure and the documents or information required thereby so that INA may seek a protective order to resist or narrow such required disclosure and/or waive Leach's compliance with the terms thereof. Upon termination of this Agreement, Leach shall promptly deliver to INA all files, patient lists and information, memoranda, plans, records or written materials of any kind, relating to the business and affairs of INA, which are then in his possession or under his control. Leach acknowledges that any patient records relating to patients whom Leach rendered services hereunder shall be and remain the exclusive property of INA. Leach shall not violate, with respect to patients of INA, any physician-patient privilege specified by statute or by common law.

9.   **Buy-In Option.**

Unless earlier terminated as provided for herein, upon expiration of the initial one (1) year terms set forth in Section 5.1 hereof, Leach shall be entitled to purchase a membership interest in INA equal to the interests owned by the other Members of INA. The purchase price (the "Purchase Price") for the membership interest to be purchased by Leach shall be equal to the fair market value of INA's tangible assets and INA's accounts receivable, as such values are determined by INA, multiplied by the total percentage ownership in INA Leach will own after the conclusion of the buy-in transaction. Leach shall execute such documents reasonably requested by INA in connection with such transaction. The parties acknowledge and agree that upon Leach's purchase of an interest in INA, Leach shall have the option to purchase an interest in Kidney Physicians of Idaho, L.L.C. equal to the interests held by the other Members of such entity. Such purchase shall occur over a five (5) year period pursuant to an agreement between Leach, Kidney Physicians of Idaho, L.L.C. and the other Members of such entity.

10.   **Limited Renegotiation.**

This Agreement shall be construed to be in accordance with any and all federal and state statutes, including Medicare, Medicaid and state rules, regulations, principles and interpretations. In the event there is a change in Medicare, Medicaid or other federal or state statutes or Medicare, Medicaid or federal or state rules, regulations, principles or interpretations that renders any of the material terms of this Agreement unlawful or unenforceable, including any services rendered or compensation to be paid hereunder, either party shall have the immediate right to initiate the renegotiation of the affected term or terms of this Agreement, upon notice to the other party, to remedy such condition. The parties shall then proceed to renegotiate the terms of this Agreement in good faith to comply with applicable laws and to maintain substantially the economic benefit and relationships agreed to hereby.

11.    **Notices.**

All notices, requests or demands and other communications from any of the parties hereto to the other shall be deemed given, made and served on personal delivery or five (5) days after deposit with the U.S. Postal Service if sent by certified mail, postage prepaid, return receipt requested; or one (1) day after sent by overnight mail through the U.S. Postal Service, Federal Express or a comparable overnight courier service to the following address:

If to INA:                              If to Leach:

Idaho Nephrology Associates,            Robert J. Leach, M.D.
P.L.L.C.                                2540 Rock Bridge Drive
5610 West Gage                          Littleton, CO   80129
Suite A
Boise, Idaho 83706
Attn: Micheal Adcox, M.D.

or to such other address as either party may notify the other of in writing from time to time.

12.    **Successors; Assignment.**

This Agreement shall be binding upon and inure to the benefit of both INA and Leach and their respective successors, heirs and legal representatives. Neither this Agreement nor any right hereunder may be assigned by Leach without the written consent of INA.

13.    **Entire Agreement; Modification; Waiver.**

This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior agreements and understandings between the parties with respect to the subject matter of this Agreement. No change, modification or amendment of this agreement shall be valid unless the same be in writing and signed by each of the parties to be bound. No waiver of any provision of this Agreement shall be valid unless in writing and signed by the party to be charged.

14.    **Waiver of Breach.**

The waiver of a breach of any provision of this Agreement by either INA or Leach shall not operate or be construed as a waiver of any subsequent breach by either INA or Leach.

15.    **Governing Law.**

This Agreement shall be governed by and construed in accordance with the laws of the State of Idaho.

16.    **Headings.**

The headings of the various articles and sections of this Agreement are inserted merely for convenience and do not expressly or by implication limit, define or extend the specific terms of the articles and sections so designated.

**IN WITNESS WHEREOF,** this Agreement has been executed by INA and Leach as of the day first above written.

IDAHO    NEPHROLOGY    ASSOCIATES, P.L.L.C.


_____ 6/5/05 _____    By: _M. C. Mallea MD 6-2-05_
Robert J. Leach, M.D.                    Its: _____