# Exhibit 1

Jed W. Manwaring, ISB# 3040
EVANS KEANE LLP
1405 W. Main St.
P. O. Box 959
Boise, Idaho 83701-0959
Telephone:  (208) 384-1800
Facsimile:  (208) 345-3514
Email: jmanwaring@evanskeane.com

Bryon J. Benevento (Pro Hac Pending)
Kimberly Neville (Pro Hac Pending)
Snell & Wilmer L.L.P.
15 West South Temple, Suite 1200
Salt Lake City, Utah  84101-1004
Telephone:  (801) 257-1900
Facsimile:  (801) 257-1800

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO, EASTERN DIVISION

| | |
|---|---|
| ROBERT LEACH, M.D.,<br><br>       Plaintiff,<br><br>vs.<br><br>IDAHO NEPHROLOGY ASSOCIATES, P.L.L.C., an Idaho professional limited liability company, KIDNEY PHYSICIANS OF IDAHO, L.L.C., an Idaho Limited Liability Company, MICHAEL ADCOX, M.D., an individual, NAGRAJ NARASIMHAN, M.D., an individual, MICHAEL MALLEA, M.D., an individual, ROBERT DAVIDSON, M.D., an individual, NICHOLAS HUNT, M.D., an individual. and JON WAGNILD, M.D., an individual,<br><br>       Defendants. | **AMENDED COMPLAINT AND JURY DEMAND**<br><br><br>Case No. 1:07cv278<br>Judge B. Lynn Winmill |

For a Complaint against Idaho Nephrology Associates, P.L.L.C., Kidney

Physicians of Idaho, L.L.C., Michael Adcox, M.D., Nagraj Narasimhan, M.D., Michael

Mallea, M.D., Robert Davidson, M.D., Nicholas Hunt, M.D., and Jon Wagnild, M.D.,
Plaintiff Robert Leach, M.D. alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Robert Leach, M.D. ("Dr. Leach") is a medical doctor who
specializes in nephrology, an area of medicine devoted to the diagnosis and treatment of
patients with kidney disorders and disease.  Dr. Leach is a resident of the State of Utah
and intends to practice medicine within the State of Utah.

2.      Defendant Idaho Nephrology Associates, P.L.L.C. ("INA") is a limited
liability company organized under the laws of the State of Idaho.  At all materials times,
INA has operated a clinical nephrology practice within the State of Idaho, including
practices in Boise, Pocatello, and Twin Falls.

3.      Defendant Kidney Physicians of Idaho, L.L.C. ("KPI") is a limited
liability company organized under the laws of the State of Idaho.  At all times material to
this action, KPI has participated in the ownership of various dialysis centers located
throughout the State of Idaho.

4.      Defendant Michael Adcox, M.D. is an individual residing within the State
of Idaho.  Dr. Adcox was a member of INA and / or KPI at all times pertinent to this
action.

5.      Defendant Nagraj Narasimhan, M.D. is an individual residing within the
State of Idaho.  Dr. Narasimhan was a member of INA and / or KPI at all times pertinent
to this action.

6.      Defendant Michael Mallea, M.D., is an individual residing within the State
of Idaho.  Dr. Mallea was a member of INA and / or KPI at all times pertinent to this
action.

7.      Defendant Robert Davidson, M.D., is an individual residing within the
State of Idaho.  Dr. Davidson was a member of INA and / or KPI at all times pertinent to
this action.

8.      Defendant Nicholas Hunt, M.D., is an individual residing within the State of Idaho.  Dr. Hunt was a member of INA at all times pertinent to this action.

9.      Defendant Jon Wagnild, M.D., is an individual residing within the State of Idaho.  Dr. Wagnild was a former member of INA and / or KPI.  Upon information and belief, Dr. Wagnild retired from INA in 2005, but retained his interest in KPI until the divesture of substantially all of the assets of KPI in April 2006.

10.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 in that this is an action between citizens of different states and the amount in controversy exceeds $75,000.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(2).

## GENERAL ALLEGATIONS

11.     Dr. Leach is a graduate of the University of Kansas Medical School who is board certified in the areas of nephrology, internal medicine, and clinical hypertension. Throughout his medical career, Dr. Leach has treated patients who suffer from a variety kidney disorders and diseases, including End Stage Renal Disease (ESRD).  Among other things, Dr. Leach has diagnosed and cared for patients who require dialysis, a process which removes wastes and excess water from the blood.

12.     Through his education and medical experience, Dr. Leach has developed expertise in the practice of nephrology and treatment of dialysis patients.  In 2000, Dr. Leach obtained certification for an inpatient dialysis facility known as the Hutchinson Clinic.  In more recent years, Dr. Leach has consulted in obtaining certification for the Bear Lake Memorial Dialysis Facility located in Idaho.  Dr. Leach has also served as a Medical Director for dialysis facilities, in which he fulfilled the supervisory and administrative responsibilities mandated by Medicare guidelines.

13.     In late 2004, Dr. Leach contacted INA's office manager to inquire about potential employment opportunities in the Pocatello and / or Boise area.  Dr. Leach was subsequently contacted by Dr. Michael Mallea, a physician member of INA, who informed Dr. Leach of a possible position in Pocatello.

14.     Defendants were interested in recruiting Dr. Leach to work in Pocatello because one of INA's senior physicians, Dr. Jon Wagnild, was retiring, which left INA without a regular physician presence in Pocatello.  Likewise, Defendants needed a physician in Pocatello to serve as the medical director of the Portneuf Dialysis Center, a free-standing clinic owned, in part, by KPI.  Defendants were further concerned about a new physician group who had recently entered the Pocatello market, which was readily attracting patients away from INA's practice and KPI's dialysis centers.  Accordingly, Defendants had an imminent need to bring a board-certified nephrologist to Pocatello in order to protect INA and KPI's financial position.

15.     INA had previously attempted to recruit a nephrologist to Pocatello, but had been unsuccessful in its efforts.  In particular, INA had difficulty recruiting a board-certified nephrologist to Idaho because of the somewhat rural nature of the community, regional medical referral patterns, and the demographics of the community.

16.     During the next several months, Dr. Leach engaged in multiple phone conversations, e-mails, and face-to-conversations with Dr. Mallea and other members of INA and KPI regarding the employment opportunity in Pocatello.  During these conversations, Dr. Mallea and others repeatedly represented to Dr. Leach that the Pocatello position was a tremendous professional opportunity that would lead to an equity position in both INA and its sister company, KPI.

17.     In February 2005, Dr. Mallea called Dr. Leach and told him that the Defendants were engaged in talks with DaVita, Inc. about a possible business transaction. Dr. Mallea also asked Dr. Leach whether he would still be interested in a position if Defendants sold the dialysis centers to DaVita.  Dr. Leach responded by stating that he would not be interested in a position if Defendants sold their interest in the dialysis centers, because the dialysis centers was the primary financial incentive for relocating his family to Pocatello.

18.     In March 2005, Dr. Mallea flew to Denver, Colorado to meet with Dr. Leach to discuss an employment offer.  During this meeting, Dr. Mallea hand-delivered Dr. Leach a written offer letter and draft employment for his consideration.

19.     During this same meeting, Dr. Leach reiterated to Dr. Mallea that the ability to buy into INA and KPI was critical to his decision to accept employment with INA.  In particular, Dr. Leach was concerned about the ability to purchase an interest in KPI because of the ongoing revenue stream flowing from the dialysis operations.

20.     In response to these concerns, Dr. Mallea told Dr. Leach the historical buy-in values for both INA and KPI, as well as the general methodology for calculating the buy-in amounts.  Dr. Mallea also provided specific examples of the historical buy-in amounts by sharing what he had personally paid for his interest in INA and KPI, and by telling Dr. Leach what Dr. Robert Davidson had paid for his interest in INA and KPI.  Dr. Mallea also referred Dr. Leach to INA's accountant, Morris Grigg, for additional information regarding the historical buy-in methodology for KPI.

21.     Dr. Leach formally responded to INA's written employment offer on April 15, 2005 by providing a list of negotiating points to INA's managing member, Dr. Michael Adcox.  In addition, Dr. Leach engaged in various communications with Dr. Mallea via telephone and e-mail throughout the month of April regarding the terms of contract.

22.     In response to Dr. Leach's April 15, 2005 letter, Dr. Mallea contacted Dr. Leach on behalf of the Defendants, and asked him to narrow his list of negotiating points.  Dr. Leach responded to this request by giving Dr. Mallea a list of "deal-breakers" including: (i) a call coverage provision; and (ii) a guaranteed ability to buy into INA and KPI at the conclusion of his employment contract.

23.     During the next several days, Dr. Leach and Dr. Mallea continued to converse regarding revisions to the draft employment contract.  These communications occurred both through e-mail and by telephone.

24.     On April 27, 2005, Dr. Leach sent Dr. Mallea an email regarding additional revisions to the draft employment contract.  In this email, Dr. Leach asked Dr. Mallea for a termination clause allowing Dr. Leach to terminate his employment early in the event of a sale, merger, or acquisition of the business.  Dr. Mallea responded to this e-mail by telephone and told Dr. Leach that there was no need for such a provision because Defendants no longer intended to sell the dialysis centers.

### The Employment Agreement

25.     Based upon Defendants' representations, Dr. Leach entered into a one-year Employment Agreement with INA on July 1, 2005.  A true and exact copy of the Employment Agreement is attached hereto as Exhibit A.  The Employment Agreement was signed by Dr. Mallea on behalf of INA with the approval of the members of both INA and KPI.

26.     The Employment Agreement was subsequently amended on July 13, 2005. A copy of the Addendum to Employment Agreement executed on July 13, 2005 is attached hereto as Exhibit B.  The Addendum was also signed by Dr. Mallea on behalf of INA, and with the approval of the members of INA and KPI.

27.     Under the Employment Agreement, Dr. Leach agreed to provide medical services to patients and to supervise dialysis treatments provided to patients of INA's practice in the Pocatello area.  In addition, Dr. Leach agreed to serve as the Medical Director of the Portneuf Nephrology Center (now known as Gateway City Dialysis) located in Pocatello, Idaho.  In exchange for these services, INA agreed to pay Dr. Leach a base salary and to provide other consideration and benefits outlined in the Employment Agreement.

28.     In order to induce Dr. Leach to accept employment with INA and consistent with Dr. Mallea's prior representations, Defendants granted Dr. Leach the right to "buy-in" to the ownership interest of INA and KPI after the completion of his initial one-year term under the Employment Agreement.

29.     The terms of Dr. Leach's buy-in for INA and KPI are governed by

Section 9 of the Employment Agreement, which reads as follows:

> 9.      Buy-In Option.
>
> Unless earlier terminated as provided for herein, upon expiration of the
> initial one (1) year terms set forth in Section 5.1 hereof, Leach shall be
> entitled to purchase a membership interest in INA equal to the interests
> owned by the other Members of INA.  The purchase price (the "Purchase
> Price") for the membership interest to be purchased by Leach shall be
> equal to the fair market value of INA's tangible assets and INA's accounts
> receivable, as such value are determined by INA, multiplied by the total
> percentage ownership in INA Leach will own after the conclusion of the
> buy-in transaction.  The parties acknowledge and agree that upon Leach's
> purchase of an interest in INA, Leach shall have the option to purchase an
> interest in Kidney Physician of Idaho, L.L.C. equal to interests held by the
> other Members of such entity.  Such purchase shall occur over a five (5)
> year period pursuant to an agreement between Leach, Kidney Physicians
> of Idaho, L.L.C. and the other Members of such entity.

30.     The Employment Agreement also contains a non-competition clause

which purports to prevent Dr. Leach from practicing medicine or participating in the

operation of a dialysis clinic for a period of five (5) years within a one hundred twenty-

five mile (125) radius of Pocatello, Idaho.  Specifically, Section 7.1 of the Employment

Agreement reads, in relevant part:

> 7.1     During the Term of this Agreement and for a period of five (5)
>         years thereafter, Leach agrees:
>
>         (a)     Not to solicit or attempt to solicit any Patient of INA so as
>                 to cause or attempt to cause such patient to terminate his or
>                 her relationship with INA;
>
>         (b)     Except as provided in Section 7.2 below, Leach agrees not
>                 to engage (except as an employee of INA), directly or
>                 indirectly, whether as an employee, officer, shareholder,
>                 director, partner, sole proprietor or otherwise, in the
>                 practice of medicine within a one hundred twenty-five
>                 (125) mile radius of Pocatello, Idaho (the "Restricted
>                 Area") and

(c)  Not to participate in the ownership, management, operation or control of (A) any outpatient dialysis facility located within the Restricted Area, (B) any business providing dialysis services or supplies directly or indirectly in the Restricted Area to parties with renal disease, including, without limitation, the provision of continuous ambulatory peritoneal dialysis, continuous cycler peritoneal dialysis, home dialysis or acute dialysis services to hospital patients, or (C) any business providing, directly or indirectly, in the Restricted Area that sells supplies in connection with the provision of dialysis services or treatments ….

(d)  Not to solicit, influence or attempt to influence any of INA's employees or independent contactors to alter or terminate their relationship with INA.

31.     Dr. Leach performed the services and obligations that were required under the Employment Agreement for the full one-year term of the contract.  Defendants, however, refused to honor Dr. Leach's buy-in option at the conclusion of his one-year term of service.

32.     In April 2006, Defendants also caused KPI to enter into an agreement whereby substantially all of the assets of KPI were sold to DaVita, Inc. through a sales agreement between Saint Alphonsus Nephrology Center, LLC and DaVita, Inc. Defendants netted several million dollars as a result of the transaction.

33.     Defendants did not obtain Dr. Leach's consent to the transaction, and did not compensate him for his option interest in the assets of KPI.  Upon information and belief, Defendants are disbursing the proceeds of the sale without allocating any portion for Dr. Leach's option interest in KPI.

34.     Dr. Leach formally resigned from INA on February 15, 2007 after providing INA with proper written notice.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment – Covenant Not to Compete Void )
### (All Defendant Except Dr. Jon Wagnild)

35.     Dr. Leach incorporates the preceding allegations of his complaint.

36.     The Employment Agreement contains a covenant not-to-compete which purports to prevent Dr. Leach from practicing medicine or otherwise treating ESRD patients for a period of five (5) years within a one hundred twenty-five mile (125) radius of Pocatello, Idaho.

37.     The non-competition provision is invalid as a matter of law because it is not necessary to protect a legitimate business interest, but instead, is an anti-competitive attempt to restrict fair competition within the medical community.

38.     The non-competition agreement is also excessive in terms of time, scope, and / or geographic limits in that it purports to prevent Dr. Leach from participating in the treatment or care of any ESRD patient within 125-mile radius of Pocatello, Idaho for a period of 5 years following the termination of the Employment Agreement.  The breadth and scope of the non-competition clause is unreasonable when compared to the initial term of the Employment Agreement, and far exceeds any reasonable parameters necessary to protect a legitimate business concern of INA.

39.     In addition, the non-competition agreement is contrary to the public policy, as it purports to prevent Dr. Leach from caring for and treating critically ill ESRD patients and from using his medical training and skill to serve dialysis providers.  There is a legitimate need for medical providers in the geographic territory covered by the non-compete, and the covenant would hinder the public interest in providing quality medical care to individuals living within these areas.

40.     There is a real and substantial controversy between Dr. Leach, on the one hand, and Defendants, on the other hand concerning the enforceability of the covenant not-to-compete.

41.     Dr. Leach is entitled to a declaratory judgment finding that the covenant not-to-compete is unenforceable as a matter of law because it is: (a) not necessary to protect a legitimate business interest; (b) excessive in terms of its time, scope, and/or geographic limits, and (c) contrary to public policy.

42.     Dr. Leach is further entitled to any additional relief necessary to enforce this Court's declaratory judgment, as well as reasonable attorneys' fees and costs incurred in obtaining this order, pursuant to Idaho Code § 12-120(3).

**SECOND CAUSE OF ACTION**
**(Declaratory Judgment – Covenant Unenforceable Due to Prior Material Breach)**
**(All Defendants Except Dr. Jon Wagnild)**

43.     Dr. Leach incorporates the preceding allegations of his complaint.

44.     Section 9 of the Employment Agreement contains a "buy-in" provision that grants Dr. Leach the right to purchase an ownership interest of INA and KPI after the completion of his initial one-year term of service.

45.     The Buy-In Option was a material term of the Employment Contract, and part of the consideration which Dr. Leach relied upon in making his decision to accept employment with INA and to provide services to KPI's dialysis clinics.

46.     Dr. Leach performed the services and obligations that were required under the Employment Agreement for the full one-year term of the contract.  INA, KPI, and their member physicians benefited from these services in that Dr. Leach generated revenue for the Defendants while treating and recruiting new patients to INA's practice and KPI's dialysis clinics.

47.     Defendants, however, breached Paragraph 9 of the Employment Agreement by refusing to honor Dr. Leach's buy-in options at the conclusion of the initial one-year term.  Defendants further breached the Employment Agreement by selling substantially all of KPI's assets to Davita, Inc. / Total Renal Care, a third party, without obtaining Dr. Leach's consent and without compensating him for his option interest.  Upon information and belief, Defendants have wrongfully disbursed the proceeds of that sale without allocating any portion of the proceeds for Dr. Leach's option interest.

48.    Defendants' conduct constitutes a prior material breach of the Employment Agreement, which terminates the contract and any continuing obligations. Likewise, in light of Defendants' conduct and breach of the Employment Agreement, it would be inequitable and unjust to enforce the covenant not-to-compete against Dr. Leach.

49.    Dr. Leach is entitled to declaratory judgment finding that Defendants have engaged in a prior material breach of the Employment Agreement and that, as a result, the covenant not-to-compete is unenforceable in accordance with the express provisions of the Employment Agreement and void as a matter of law.

50.    Dr. Leach is further entitled to any additional relief necessary to enforce this Court's declaratory judgment, as well as reasonable attorneys' fees and costs incurred in obtaining this order, pursuant to Idaho Code § 12-120(3).

### THIRD CAUSE OF ACTION
### (Breach of Contract – All Defendants)

51.    Dr. Leach incorporates the preceding allegations of his complaint.

52.    The Employment Agreement contains a "buy-in" provision which grants Dr. Leach the right to purchase an ownership interest of INA, as well as an ownership interest in KPI after the completion of his initial one-year term of service.

53.    The Buy-In Option was a material term of the Employment Contract, which Dr. Leach relied upon in making his decision to accept employment with INA and to provide services to KPI's dialysis clinics.

54.    Dr. Leach performed the services and obligations that were required under the Employment Agreement for the full one-year term of the contract.  INA, KPI, and their member physicians benefited from these services in that Dr. Leach generated revenue for the Defendants while treating and recruiting new patients to INA's practice and KPI's dialysis clinics.  Dr. Leach's services also resulted in an increase in value to KPI's assets by stabilizing the patient census within the Pocatello market.

55.     Defendants, however, breached Paragraph 9 of the Employment Agreement by refusing to honor Dr. Leach's buy-in options at the conclusion of the initial one-year term.

56.     Defendants further breached the Employment Agreement by selling substantially all of KPI's assets to a third party without obtaining Dr. Leach's consent, and without compensating him for his option interest.  Upon information and belief, Defendants have wrongfully disbursed the proceeds of that sale without allocating any portion of the proceeds for Dr. Leach's option interest.

57.     Dr. Leach has been damaged by Defendants' refusal to honor the buy-in options in that he has been denied the opportunity to share in the equity and income associated with a membership interest in INA and KPI, and has been denied the opportunity to share in the proceeds from the sale of KPI.

58.     Dr. Leach is entitled to actual and compensatory damages resulting from Defendant's breach of the Employment Agreement, in an amount to be proven at trial.

59.     Pursuant to Idaho Code § 12-120(3), Dr. Leach is further entitled to recover of his attorneys' fees incurred in prosecuting his claims.

## FOURTH CAUSE OF ACTION
### (Interference w/ Prospective Economic Relations)
### (All Defendants Except Dr. Jon Wagnild)

60.     Dr. Leach incorporates the preceding allegations of his complaint.

61.     Dr. Leach has an economic relationship with current and prospective patients which he has developed through years of service, professionalism, and goodwill. Defendants know of, and have benefited from Dr. Leach's professional reputation in that they have collected fees for services rendered by Dr. Leach to various patients, and have marketed Dr. Leach's skills and patient base to prospective buyers of KPI's assets.

62.     Dr. Leach also enjoys a prospective economic relationship with new patients who seek medical care, as well as dialysis providers who wish to consult with

Dr. Leach in the operation of their clinics.  This economic relationship exists because Dr. Leach has developed a reputation within the medical community as a highly trained and skilled nephrologist.

63.     Defendants have interfered with Dr. Leach's prospective economic relations by preventing Dr. Leach from treating ESRD patients and by preventing Dr. Leach from working with dialysis providers within the Pocatello area.  Defendants have engaged in this conduct with an improper purpose and through improper means including threats, intimidation, frivolous accusations, and disparaging comments to members of the medical community.

64.     Defendants' interference with Dr. Leach's lawful practice of medicine and pursuit of legitimate business opportunities within the medical community has caused damage to Dr. Leach in amount to be proven at trial.

### FIFTH CAUSE OF ACTION
#### (Negligent Misrepresentation – All Defendants)

65.     Dr. Leach incorporates the preceding allegations of his complaint.

66.     Before he accepted employment with INA, Dr. Leach had a well-established and respected medical practice in Kansas and Colorado.  Dr. Leach had also enjoyed a growing reputation in the medical community, as well as a lucrative salary and benefits from his previous position.

67.     In order to induce Dr. Leach to accept employment, INA, KPI, and their member physicians represented to Dr. Leach that he would be offered a partnership opportunity and equity membership in INA as well as KPI.  Defendants further represented that Dr. Leach could expect a substantial increase in his salary / draw as well as additional monetary benefits from his membership interest.  In addition, Defendants promised Dr. Leach that there would be additional growth opportunities and financial rewards from the ongoing expansion of INA's practice and KPI's operations throughout the State of Idaho.

68.     Defendants' misrepresentations were made for purposes of inducing Dr. Leach to accept employment and to provide services to INA and KPI, which in turn, benefited the member physicians of INA and KPI.  These misrepresentations were material, and were critical to Dr. Leach's decision to enter into a business relationship with the Defendants.

69.     Dr. Leach relied upon the misrepresentations to his detriment in making the decision to accept employment with INA.  Among other things, Dr. Leach has: (a) abandoned a highly successful and growing practice in Colorado to pursue the promise of partnership with INA and KPI; (b) relocated his family to Idaho at substantial cost and personal expense; and (c) foregone other professional opportunities under the guise of Defendants' promise to give him a partnership interest in INA and KPI.

70.     Dr. Leach has been damaged by Defendants' conduct, in an amount to be proven at trial.

### SIXTH CAUSE OF ACTION
**(Common Law Fraud – All Defendants)**

71.     Dr. Leach incorporates the preceding allegations of his complaint.

72.     In order to induce Dr. Leach to accept employment with INA, Dr. Mallea, while acting on behalf of INA and KPI, represented to Dr. Leach that he would have the opportunity to purchase a partnership interest and equity membership in INA as well as KPI.  Dr. Mallea made these representations during a face-to-face meeting taking place in the Tattered Cover Bookstore in Denver, Colorado in March 2005.

73.     Dr. Mallea, while acting on behalf of INA and KPI, also represented to Dr. Leach that the Defendants would not sell their interest in KPI's dialysis clinics during the term of Dr. Leach's Employment Agreement.  These representations were made in numerous phone conversations between Dr. Leach and Dr. Mallea taking place in April 2005, and were made in response to direct questions from Dr. Leach regarding Defendants' plans to sell their interest in the dialysis centers.

74.     These representations were false because, at the time the representation was made, Defendants were exploring options to sell KPI's interest in the dialysis clinics to potential third-party buyers.  Among other things, Defendants had: (i) contacted counsel for purposes of preparing an offering circular for the centers; (ii) received calls from various interested purchasers; and (iii) identified prospective purchasers for the dialysis centers.

75.     The Defendants' misrepresentations were material because Dr. Leach would not have entered into a business relationship with the Defendants if he had known that Defendants were planning to sell the dialysis centers.  Dr. Leach previously informed the Defendants that he was not interested in an employment offer if the dialysis centers were for sale.

76.     Defendants' knew that their representations were false, but made them anyway in order to induce Dr. Leach to accept employment in Pocatello.  In particular, Defendants wanted Dr. Leach to rely on their statements so that he would relocate to Pocatello and prevent additional patients from transferring to a competing medical practice and dialysis center.  Defendants also wanted Dr. Leach to relocate to Pocatello so that they could stabilize the patient census at the Portneuf Dialysis Center in order to make the center more attractive to potential third-party buyers.

77.     Dr. Leach was living in Colorado at the time these statements were made, and consequently, did not know that Defendants were actively attempting to market the dialysis centers.

78.     Dr. Leach relied upon the misrepresentations to his detriment in making the decision to accept employment with INA.  Among other things, Dr. Leach has: (a) abandoned a highly successful and growing practice in Colorado to pursue the promise of partnership with INA and KPI; (b) relocated his family to Idaho at substantial cost and personal expense; and (c) foregone other professional opportunities under the guise of Defendants' promise to give him a partnership interest in INA and KPI.

79.     Dr. Leach has been defrauded by Defendants' conduct, in that he has been denied the opportunity to share in the equity and income associated with a membership interest in INA and KPI, and has been denied the opportunity to share in the proceeds from the sale of KPI.

80.     Dr. Leach is entitled to damages in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION
### (Federal Securities Fraud – All Defendants)

81.     Dr. Leach incorporates the preceding allegations of his complaint.

82.     The Employment Agreement grants Dr. Leach a right to acquire an ownership interest in INA and KPI.  This transaction constitutes the sale of a security within the meaning of the federal securities laws.

83.     Defendants made false statements or omissions of material fact in connection with the sale of a security under the Employment Agreement.  Defendants made these statements knowing that they were materially false and misleading, or in reckless disregarded of their false and misleading nature.  Defendants further failed to disclose material facts necessary in order to make the statements made, in light of the circumstance under which they were made, not misleading.

84.     Defendants, by their conduct, committed violations of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 in that they:

a.     Employed devices, schemes, and artifices to defraud;

b.     Made untrue statements of material facts or failed to state material facts necessary in order to made statements made, in light of the circumstances, not misleading; or

c.     Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Dr. Leach.

85.     In particular, Defendants made material misrepresentations or omissions in communications regarding their efforts to market and sell the assets of KPI by

representing that they would not sell their interest in KPI's dialysis clinics during the term of Dr. Leach's Employment Agreement.

86.     These representations were made in numerous phone conversations between Dr. Leach and Dr. Mallea taking place in April 2005, and were made in response to direct questions from Dr. Leach regarding Defendants' plans to sell their interest in the dialysis centers.  Dr. Leach has engaged in additional communications with the Defendants through use of the United States Mail as well as e-mail.

87.     Dr. Leach had no notice of any facts that would cast doubt on the integrity of the Defendants as fiduciaries of the Company and its shareholders.  Dr. Leach reasonably relied upon the accuracy of the Defendants' representations in making his decision to accept an option interest in INA and KPI on the terms listed in the Employment Agreement.  Dr. Leach would not have entered into Employment Agreement had he known the truth of the Defendants' misstatements and omissions.

88.     Dr. Leach has been defrauded by Defendants' conduct, in that he has been denied the opportunity to share in the equity and income associated with a membership interest in INA and KPI, and has been denied the opportunity to share in the proceeds from the sale of KPI.

89.     As a direct result of the Defendants' misstatements and omissions, Dr. Leach has sustained damage in an amount to be proven at trial.  Dr. Leach is further entitled to recover treble damages and attorneys fees to the extent permitted by federal law.

### EIGHTH CAUSE OF ACTION
### (Securities Fraud under Idaho Code § 30-14-102 – All Defendants)

90.     Dr. Leach incorporates the preceding allegations of his complaint.

91.     The Employment Agreement grants Dr. Leach a right to acquire an ownership interest in INA and KPI.  This transaction constitutes the sale of a security within the meaning of the Idaho securities laws.

92.     Defendants made false statements or omissions of material fact in connection with the sale of a security under the Employment Agreement.  Defendants made these statements knowing that they were materially false and misleading, or in reckless disregarded of their false and misleading nature.  Defendants further failed to disclose material facts necessary in order to make the statements made, in light of the circumstance under which they were made, not misleading.

93.     In particular, Defendants made material misrepresentations or omissions in communications regarding their efforts to market and sell the assets of KPI by representing that they would not sell their interest in KPI's dialysis clinics during the term of Dr. Leach's Employment Agreement.

94.     These representations were made in numerous phone conversations between Dr. Leach and Dr. Mallea taking place in April 2005, and were made in response to direct questions from Dr. Leach regarding Defendants' plans to sell their interest in the dialysis centers.  Dr. Leach has engaged in additional communications with the Defendants through use of the United States Mail as well as e-mail.

95.     Dr. Leach had no notice of any facts that would cast doubt on the integrity of the Defendants as fiduciaries of the Company and its shareholders.  Dr. Leach reasonably relied upon the accuracy of the Defendants' representations in making his decision to accept an option interest in INA and KPI on the terms listed in the Employment Agreement.  Dr. Leach would not have entered into Employment Agreement had he known the truth of the Defendants' misstatements and omissions.

96.     Dr. Leach has been defrauded by Defendants' conduct, in that he has been denied the opportunity to share in the equity and income associated with a membership interest in INA and KPI, and has been denied the opportunity to share in the proceeds from the sale of KPI.

97.     As a direct result of the Defendants' misstatements and omissions, Dr. Leach has sustained damage in an amount to be proven at trial.  Dr. Leach is further

entitled to recover statutory damages and attorneys fees to the extent permitted by federal law.

### NINTH CAUSE OF ACTION
**(Conversion – All Defendants)**

98.     Dr. Leach incorporates the preceding allegations of his complaint.

99.     The Employment Agreement granted Dr. Leach an option to purchase an ownership interest in INA and KPI after the completion of his initial one-year term of service.  Dr. Leach's option is a vested property right which has value.

100.     Defendants sold substantially all of KPI's assets to a third party without obtaining Dr. Leach's consent, and without compensating him for his option interest. Defendants have wrongfully disbursed the proceeds of that sale without allocating any portion of the proceeds to Dr. Leach's option interest.

101.     By selling the substantially all of the assets of KPI, Defendants have wrongfully deprived Dr. Leach of his option interest in KPI.

102.     Dr. Leach is entitled to compensation for the value of his option interest, in an amount to be proven at trial.  Dr. Leach is further entitled to the reasonable expenses and attorneys' fees incurred in recovering his converted interest.

### TENTH CAUSE OF ACTION
**(Constructive Trust – All Defendants Except INA and KPI)**

103.     Dr. Leach incorporates the preceding allegations of his complaint.

104.     The Employment Agreement granted Dr. Leach an option to purchase an ownership interest in INA and KPI after the completion of his initial one-year term of service.  Dr. Leach's option is a vested property right which has value.

105.     Defendants sold substantially all of KPI's assets to a third party without obtaining Dr. Leach's consent, and without compensating him for his option interest. Defendants then disbursed the proceeds of the sale to the individual defendants who have now fully realized the benefits of the sale of KPI's assets.

106.     A constructive trust was imposed upon the proceeds from the sale of KPI's assets at the time the property was wrongfully sold and distributed to the individual defendants.  The constructive trust exists for the benefit of Dr. Leach until the misappropriated property is recovered.

107.     Dr. Leach is entitled to an order accounting for the distribution of the proceeds of the KPI sale and judgment in the amount of his option interest.

### ELEVENTH CAUSE OF ACTION
**(Alter Ego – All Defendants Accept Dr. Nicholas Hunt)**

108.     Dr. Leach incorporates the preceding allegations of his complaint.

109.     In April 2006, the members of KPI included Dr. Adcox, Dr. Mallea, Dr. Narasihman, Dr. Davidson, and Dr. Wagnild.  All of the members of KPI were also members of INA.

110.     KPI did not conduct any meetings of its members.

111.     KPI does not keep minutes of its business activities.

112.     Upon information and belief, Defendants have intermingled the business activities and funds of INA and KPI.  By way of example, the members of KPI have utilized monies owed to KPI to fund bonuses for INA employees, have contracted on behalf KPI when acting in their capacities as members of INA, and have intermingled the business interests of INA and KPI in their dealings with third parties.

113.     KPI shares common ownership with INA.  There is a unity of interest between KPI, INA, and the individual doctor defendants.

114.     The members of KPI (Drs. Adcox, Mallea, Narasihman, Davidson, and Wagnild) caused KPI to sell substantially all of its assets to a third party, and have each collected several million dollars from the sale of KPI's assets.  Defendants did not obtain Dr. Leach's consent to the sale, and did not compensate him for his option interest in KPI.

115.    Defendants have left KPI in a position where it is essentially a shell corporation.  KPI does not have any cash, assets, property, or ongoing operations, and no longer has any ability to satisfy an adverse judgment.

116.    It would be inequitable to recognize KPI's separate corporate form when the Defendants have intermingled INA and KPI's operations, funds, and contract responsibilities, and disposed of all legitimate assets of the entity.

117.    Dr. Leach is entitled to an order finding that KPI is the alter ego of INA and the individual members of KPI.  Dr. Leach is further entitled to an order finding that INA and the individual members of KPI are jointly responsible for the debts or judgments against KPI.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests this Court to enter judgment against Defendant as follows:

1.    On his First Cause of Action, for an order declaring that the covenant not-to-compete is unenforceable because it does not protect a legitimate business interest, is overly broad in time and scope, and / or contrary to public policy, along with reasonable attorneys' fees and costs, together with any other relief necessary to give effect to the Court's declaration.

2.    On his Second Cause of Action, for an order declaring that the covenant not-to-compete is unenforceable due to Defendant's prior material breach of contract, and for reasonable attorneys' fees and costs, together with any other relief necessary to give effect to the Court's declaration.

3.    On his Third, Fourth, Fifth, and Sixth Causes of Action, for damages in an amount to be proven at trial, plus reasonable attorneys' fees and costs.

4.    On his Seventh Cause of Action, for damages in an amount to be proven at trial, plus treble damages and reasonable attorneys' fees as allowed by federal law.

5.      On his Eighth Cause of Action, for damages in an amount to be proven at trial, plus statutory damages and reasonable attorneys' fees as allowed by statute.

6.      On his Ninth Cause of Action, for judgment in an amount to be proven at trial, plus reasonable expenses and attorneys' fees incurred in recovering the converted property.

5.      On his Tenth Cause of Action, for an order accounting for the distribution of the proceeds of the KPI sale and judgment against the individual defendants in an amount to be proven at trial, plus reasonable attorneys' fees and costs.

6.      On his Eleventh Cause of Action, for an order finding that INA and the individual members of KPI are jointly and severally responsible for the debts or judgments against KPI.

7.      For any other relief that this Court deems just and equitable under the circumstances.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues triable as a matter of right.  Plaintiff has previously tendered the requisite fee to the Clerk of Court.

DATED this ___ day of October, 2007.


_____
Jed W. Manwaring
Evans Keane LLP

Bryon J. Benevento
Kimberly Neville
Snell & Wilmer, LLP

*Attorneys for Plaintiff*