Kelly A. Cameron (ISB No. 7226)
kcameron@perkinscoie.com
Christine M. Salmi (ISB. No. 5626)
csalmi@perkinscoie.com
PERKINS COIE LLP
251 East Front Street, Suite 400
Boise, Idaho  83702-7310
Telephone: (208) 343-3434
Facsimile:  (208) 343-3232

*Attorneys for DaVita, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT LEACH, M.D.,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>IDAHO NEPHROLOGY ASSOCIATES, P.L.L.C, *et al.*,<br><br>　　　　　　Defendants. | Case No. CV-07-278-S-BLW<br><br>**DECLARATION OF JOHN F. WALCHER IN SUPPORT OF DAVITA, INC.'S REQUEST FOR PROTECTIVE ORDER** |

I, John F. Walcher, declare as follows:

　　　　1.　　I am over 18 years of age and have personal knowledge of the matters set forth in this declaration.

　　　　2.　　I am a Transaction Director for DaVita, Inc. ("DaVita"), responsible for negotiating and closing various business transactions for DaVita, including acquisitions, joint ventures and divestitures.  In the transactions I manage, I am the opposing side's point of contact throughout the process.  I perform these activities throughout the country and have been employed in this capacity since May, 2007.  I have over 10 years of Transaction

Director experience in various industries. Further, I have been assigned the responsibility of monitoring the activities of Liberty Dialysis, LLC ("Liberty") since May, 2007.

3. The Closing Books at issue here contain DaVita proprietary and confidential research, development, or commercial information that, if revealed to the public generally or to DaVita's competitors specifically, would cause harm to DaVita. In this regard, the Closing Books contain the following:

    a. **Purchase and Sale Agreements**

The Purchase and Sale Agreement included in the Closing Books at issue here is derived from DaVita's standard form and includes information on how DaVita structures an acquisition (including both pricing and forms of consideration, such as cash, seller notes, stock, earn-outs, etc.), any restrictive covenants included in the agreement (non-competition, non-solicitation, etc.), the time and geographical scope of any restrictive covenants, any carve-outs or limitations that the sellers received regarding the restrictive covenants, any employment agreements or put/call option agreements, how, why and when the agreements can be terminated, and representations and warranties regarding past or future risks, liabilities, etc. These agreements often contain confidentiality restrictions.

    b. **Exhibits / Schedules to the Purchase and Sale Agreements**

The Purchase and Sale Agreements contain supplemental information used by all parties to complete due diligence and formulate a post-closing plan, among other uses. These Exhibits/Schedules potentially contain personal and confidential information regarding employee compensation and patient data protected by the Health Insurance Portability and Accountability Act (HIPAA).

### c.     Schedule and Copies of Assigned Agreements

The Closing Books also contain information on all the agreements that were assigned to DaVita as part of the sale, as well as copies of the agreements themselves, including agreements pertaining to the purchase of equipment and supplies from third parties, agreements regarding the provision of dialysis services to hospitals and nursing home residents, real estate leases, and the like. These agreements contain confidential and competitively sensitive pricing information, including any applicable rebates and/or discounts for services, and information regarding whether or not the agreements are exclusive. Such agreements contain their own confidentiality restrictions.

### d.     Medical Director Agreements

For each of the acquired centers there is a Medical Director Agreement ("MDA") covering the provision of medical director oversight of that center. The MDA includes a comprehensive list of duties contracted for, compensation paid for providing those duties, additional restrictive covenants and other confidential information. Like deal documents, the structure of an MDA, including compensation paid, is unique to each dialysis provider.

### e.     Leases

For each of the centers there may be an assigned lease. Information included would be term of the lease, rental amount, and any options for additional space or renewal periods. Such information would give a competitor valuable insight into DaVita's strategic planning.

4.     Because the information contained in the Closing Books is proprietary and crucial to DaVita's competitive position in the marketplace and given the level of competition in acquiring and operating dialysis centers, DaVita goes to great lengths and takes all reasonable steps to maintain the secrecy of the confidential and proprietary material and information contained in the Closing Books, including, those steps taken with respect to

Idaho Nephrology Associates, one of the named Defendants in this case. Such steps include entering into a Confidentiality and Non-Disclosure Agreement at the time initial talks are started with potential acquisition targets and detailed confidentiality restrictions included in the closing documents and agreements themselves. DaVita employees, and any outside agents or consultants acting on DaVita's behalf and who are engaged in working on potential transactions also sign detailed confidentiality and non-disclosure agreements. Such information is only available to certain DaVita employees and agents, on a need-to-know basis, and is stored in locked cabinets to prohibit inadvertent or unauthorized access.

5.  DaVita's investments in the confidential and proprietary information include the time and expense in developing the agreements, the legal analysis regarding how to structure a transaction while at the same time complying with all applicable laws and regulations, and the expenses associated with engaging third-party valuation firms. Moreover, DaVita's investment in the training and development of its employees is at risk if the confidential information such as employee compensation that can be found in the Closing Books is disclosed.

6.  The value to DaVita of this information derives from its confidential and proprietary nature – that is, having developed the information, DaVita believes that it enjoys a competitive advantage in the marketplace that derives, at least in part, from the information itself as well as the fact that its competitors do not have the information. For example, the structure of a transaction is not only unique to each dialysis provider, but that structure is often the deciding factor for a provider to go forward with a transaction involving DaVita. Over the years, DaVita has developed a number of deal structures (which include the deal structure itself as well as such things as how DaVita structures its relations with and

compensates physicians for medical director services post-acquisition) that enable it to tailor a specific transaction (or proposed transaction) to the needs of the provider at issue. To enable a competitor to have access to this information would not only strip DaVita of this hard-earned competitive advantage (into which DaVita has made significant investments in terms of both time and money), it would also significantly handicap DaVita in future transactions when that competitor is also bidding on a potential acquisition or joint venture. In short, armed with confidential information regarding how DaVita structures its transactions and relationships post-transaction, a competitor would be able to tailor and fine tune its proposal to mimic or counteract DaVita's competitive positioning and offering.

7.  Moreover, because the structure of a transaction is unique to each dialysis provider, and often is the reason why a seller decides to do business with a specific company, disclosure of such information to its competitors would severely undermine DaVita's ability to compete in these transactions. While DaVita has, over time and at significant expense, developed a specific approach to structuring such transactions, each specific deal often contains its own unique elements. Moreover, disclosure would harm DaVita's reputation if it is perceived in the marketplace as a business that cannot honor the confidentiality agreements embedded in the various deal documents.

8.  Likewise, disclosing the details of the transaction at issue here to the public generally would cause harm to DaVita in future deals, as the parties we look to negotiate with in the future would expect similar concessions. In this way, disclosure of specific deal details would, in effect, create a presumptive ceiling on DaVita's economic upside as each new transaction partner would insist on receiving all of the concessions included in the deal disclosed, plus some of its own.

9. Finally, the backdrop against which the issues discussed above, and this dispute, must be viewed is critical. The clinical dialysis marketplace is intensely competitive and DaVita is currently now or has in the recent future found itself directly competing with Liberty for both acquisitions and employees both across the country and here in Idaho. Liberty operates at least 31 facilities (over half of all Liberty centers) within 30 miles of a DaVita center and has at least five additional centers believed to be in development within this same proximity. It is not uncommon for a dialysis patient or employee to travel 30 miles for treatment or employment, as the case may be. . Liberty operates one center in Connecticut (12 miles from an existing DaVita center), is developing a second and is believed to be developing a third. The second center is located between two DaVita centers, ostensibly with the sole intention of competing directly with DaVita. Liberty also operates at least seven centers in northern Indiana and is believed to be opening two more, both within two miles of existing DaVita centers. All seven of Liberty's Pennsylvania-based centers are within 25 miles of existing DaVita centers, as are all four North Carolina-based Liberty centers. The kidney dialysis industry is highly competitive, with numerous providers operating multiple centers – many across state lines. Many states restrict the development of dialysis centers through a Certificate of Need ("CON") process, whereby providers must prove an immediate need for additional services. By its nature, where it is illegal to pay for a patient referral, kidney dialysis industry competes heavily on price, and to provide the best possible service and clinical outcomes. Thus, hiring the best nurses, patient care technicians and other dialysis professionals is extremely important. Moreover, due to the economic reality of supply and demand, it is widely expected that the kidney dialysis industry will suffer pricing pressure from commercial insurance companies.

10. In sum, allowing one of DaVita's direct competitors to have access to DaVita's confidential and proprietary information contained and reflected in the Closing Books would cause significant competitive injury to DaVita and violate numerous confidentiality agreements involving DaVita and/or other third-parties who are not involved in this lawsuit.

11. It has recently come to my attention that Dr. Leach's legal counsel in this case is the same as that used by Liberty in matters relating to the competition between DaVita and Liberty in other states across the country. Indeed, I have reviewed filings made by Mr. Benevento and the Snell & Wilmer firm on behalf of Liberty in a so-called CON administrative proceeding in the state of Washington and a legal proceeding in the state of North Carolina.

12. Based on these filings and other information received from my reports at DaVita of Liberty's use of this same legal counsel, it is my belief that counsel for Dr. Leach in this matter provides advice and counsel to Liberty on decisions and issues relating to and bearing directly upon competition between Liberty and DaVita.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON NOVEMBER 5, 2007. (*See* 28 U.S.C. § 1746).

_____
John F. Walcher

DECLARATION OF JOHN F. WALCHER IN SUPPORT OF
DAVITA, INC.'S REQUEST FOR PROTECTIVE ORDER – 7
38585-0003/LEGAL13700137.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies under the laws of the State of Idaho that, on this 5th day of November, 2007, he caused the foregoing document to be served on the person(s) listed below in the manner shown:

| | Hand Delivery | ☐ |
|---|---|---|
| Bryon J. Benevento | U.S. Mail | ☐ |
| SNELL & WILMER | Overnight Mail | ☐ |
| 15 West South Temple, Suite 1200 | Facsimile (801) 251-1800 | ☐ |
| Salt Lake City, Utah 84101-1004 | ECF bbenevento@swlaw.com | ☒ |
| Telephone: (801) 257-1902 | | |
| Jed W. Manwaring | Hand Delivery | ☐ |
| EVANS KEANE | U.S. Mail | ☐ |
| PO Box 959 | Overnight Mail | ☐ |
| 1405 West Main Street | Facsimile (208) 345-3514 | ☐ |
| Boise, Idaho 83701-0959 | ECF jmanwaring@evanskeane.com | ☒ |
| Telephone: (208) 384-1800 | | |
| Kimberly A. Neville | Hand Delivery | ☐ |
| SNELL & WILMER | U.S. Mail | ☐ |
| 15 West South Temple, Suite 1200 | Overnight Mail | ☐ |
| Salt Lake City, Utah 84101-1004 | Facsimile (801) 257-1800 | ☐ |
| Telephone: (801) 257-1900 | ECF kneville@swlaw.com | ☒ |
| Martin C. Hendrickson | Hand Delivery | ☐ |
| GIVENS PURSLEY LLP | U.S. Mail | ☐ |
| 601 West Bannock Street | Overnight Mail | ☐ |
| PO Box 2720 | Facsimile (208) 388-1300 | ☐ |
| Boise, Idaho 83702 | ECF mch@givenspursley.com | ☒ |
| Telephone: (208) 388-1200 | | |
| Patrick J. Miller | Hand Delivery | ☐ |
| GIVENS PURSLEY LLP | U.S. Mail | ☐ |
| PO Box 2720 | Overnight Mail | ☐ |
| Boise, Idaho 83701-2720 | Facsimile (208) 388-1300 | ☐ |
| Telephone: (208) 388-1200 | ECF pjm@givenspursley.com | ☒ |

| | | |
|---|---|---|
| Robert Blaine White<br>GIVENS PURSLEY LLP<br>PO Box 2720<br>Boise, Idaho 83701-2720<br>Telephone: (208) 388-1200 | Hand Delivery<br>U.S. Mail<br>Overnight Mail<br>Facsimile (208) 388-1300<br>ECF rbw@givenspursley.com | ☐<br>☐<br>☐<br>☐<br>☒ |
| B. Newal Squyres<br>HOLLAND & HART<br>PO Box 2527<br>Boise, Idaho 83701<br>Telephone: (208) 342-5000 | Hand Delivery<br>U.S. Mail<br>Overnight Mail<br>Facsimile (208) 343-8869<br>ECF nsquyres@hollandhart.com | ☐<br>☐<br>☐<br>☐<br>☒ |

/s/
_____
Kelly A. Cameron